UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL R. MARASCO,<br><br>               Plaintiff,<br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>               Defendant. | Case No.: C 10-3970-PSG<br><br>**ORDER GRANTING PLAINTIFF MICHAEL MARASCO'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT MICHAEL J. ASTRUE'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Michael R. Marasco ("Marasco") filed this action on February 17, 2012. He appeals the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying him disability insurance benefits.[1] Marasco moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the arguments of counsel, the court GRANTS Marasco's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment and remands the case for further proceedings consistent with this opinion.

---

[1] The challenged decision was rendered by Administrative Law Judge T. Patrick Hannon (the "ALJ") on June 26, 2009. The ALJ's decision became final on July 8, 2010, when the Appeals Council of the Social Security Administration denied Marasco's request for administrative review of the decision.

1

Case No.: 10-3970
ORDER

# I. BACKGROUND

The following facts are taken from the June 26, 2009, decision by the ALJ and the accompanying administrative record ("AR"). Marasco was born August 18, 1956,[2] and has a high school education.[3] He worked in shipping and receiving from 1998-1999, as a security guard for two weeks in 2000, as a packaging clerk from 1992 to 1993, as a machine operator from 1975 to 1990, and as a forklift operator from 2000 to 2003.[4] Because Marasco was insulin-dependent, his employment as a forklift operator was terminated on June 6, 2003 pursuant to a policy prohibiting insulin-dependent diabetics from operating heavy machinery.[5] He has not been employed since 2003.[6]

## A. Medical Evidence

Marasco was first diagnosed with diabetes in June 2000 after being hospitalized with polyuria, polydipsia, and leg cramps.[7] He reported suffering since 1985 edema in his legs and feet.[8] Over the next few months, Marasco appeared to gain control of his diabetes,[9] but on June 23, 2003, he again went to a hospital emergency room with complaints of swelling and cramping in his legs.[10] He returned to the hospital in August 2003 with complaints of leg swelling.[11]

---

[2] *See* AR at 115.

[3] *See id.* at 123.

[4] *See id.* at 152.

[5] *See id.* at 66.

[6] *See id.* at 191.

[7] *See id.* at 239.

[8] *See id.* at 241.

[9] *See id.* at 249.

[10] *See id.* at 322-23.

[11] *See id.* at 320.

2
Case No.: 10-3970
ORDER

Marasco frequently sought medical care at hospitals throughout 2004 and 2005.[12] He continued to complain of leg swelling and pain,[13] and he sought treatment for diabetes.[14] In October 2004, Marasco began receiving treatment from Dr. Kimberly Carlson ("Carlson") as his primary care physician.[15] In 2005, Carlson opined that Marasco "currently suffers from diabetes, chronic leg swelling, high cholesterol, and liver inflammation," and that both his diabetes and his leg edema were not responding well to treatment.[16] She noted that as a result of his conditions "he has been essentially bedbound for the last two months and unable to leave the house for more than an hour at a time."[17] He continued to seek treatment for his diabetes and leg edema through 2009, including visits to Dr. Jamie Nguyen ("Nguyen").[18]

In 2007, Marasco filed for disability benefits.[19] As part of the disability determination process, his records were evaluated by Dr. Tamara L. Anderson and Dr. Charles Fracchia.[20] Both agreed that Marasco had provided insufficient medical records to establish disability prior to his last date of insured status, which is the last date on which Marasco was eligible to claim disability.[21] Dr. Roger Fast and Dr. Natalie G. Marroquin also reviewed his files and reached the same conclusion.[22]

---

[12] *See id.* at 259, 260, 261, 268, 270, 283, 285, 297, 311, 312, 318, 354, 411.

[13] *See, e.g.*, *id.* at 259, 260, 270, 283, 285, 354.

[14] *See, e.g.*, *id.* at 305, 311, 312, 411.

[15] *See id.* at 374.

[16] *See id.* at 251.

[17] *See id.*

[18] *See, e.g.*, *id.* at 345, 346, 347, 358, 360.

[19] *See id.* at 77.

[20] *See id.* at 77, 324.

[21] *See id.*

[22] *See id.*

3

Case No.: 10-3970
ORDER

1  Marasco was examined in March 2009 by Dr. Clark E. Gable ("Gable") for the Social
2  Security Administration's disability determination.[23] Gable found that Marasco's diabetes was
3  "now under good control" but with "complications of peripheral neuropathy, mild to moderate."[24]
4  He also found Marasco's neuropathy responded well to the drug Gabapentin and would continue to
5  improve with increased dosage of the drug.[25] Based on his findings, he opined that Marasco could
6  "sit up to 6 hours a day with usual breaks" and that "standing and walking may be limited to
7  perhaps 4 hours a day given his peripheral neuropathy."[26]

Marasco was also examined by Dr. Don Dinh Tran ("Tran") for his Medi-Cal disability claim.[27] Based on his examination, Tran determined Marasco could "ambulate normally," "would be capable of carrying or lifting 10lbs occasionally" and "would have no difficulty in sitting, grasping, holding, feeling or using small tools, but [w]alking would be limited to occasionally."[28]

Marasco's disability claim was denied on September 12, 2007, and again on reconsideration on January 17, 2008.[29] He requested a hearing to review the determination.[30]

**B.  Hearing**

The ALJ held a hearing on May 4, 2009.[31] At the hearing, the ALJ questioned Marasco regarding his choice to proceed without an attorney, and Marasco indicated he did not need more time to find an attorney and wanted to proceed pro se.[32] Marasco argued that his diabetic

---

[23] *See id.* at 391.

[24] *See id.*

[25] *See id.* at 392.

[26] *See id.*

[27] *See id.* at 393.

[28] *See id.*

[29] *See id.* at 77, 78.

[30] *See id.* at 94.

[31] *See id.* at 57.

[32] *See id.* at 59.

4
Case No.: 10-3970
ORDER

neuropathy was on the impairment list and therefore should be considered a disability.[33] The ALJ continued the first hearing to have another Disability Determination Services medical examiner evaluate Marasco's condition.[34]

At the second hearing on June 1, 2009, Dr. Steven Gerber ("Gerber"), a Disability Determination Services medical examiner, appeared telephonically to testify about Marasco's diabetic neuropathy.[35] Based on his review of Marasco's file, he determined that although Marasco suffered peripheral neuropathy as a complication of his diabetes, it did not meet or equal any of the listed impairments or impede his ability to do sedentary work.[36] Marasco countered that his receipt of disability benefits under the Medi-Cal program supported his claim that his impairment was a disability.[37] The ALJ took the case under submission.[38]

### C. ALJ's Findings

The ALJ issued his decision on June 26, 2009. He determined that, based on Marasco's earnings reports, his last date of insured status was June 30, 2003, and held that Marasco was not disabled on or before that date.[39] For the first step of the disability analysis, the ALJ found Marasco had not engaged in substantial gainful activity from June 6, 2003, until his last date of insured status, June 30, 2003.[40] He also found that Marasco's diabetes, high cholesterol, and edema qualified as severe impairments under 20 C.F.R. § 404.1520(c) for step two of the analysis.[41] At step three, the ALJ found Marasco's impairments did not meet or medically equal

---

[33] *See id.* at 70.

[34] *See id.* at 73.

[35] *See id.* at 57.

[36] *See id.* at 45.

[37] *See id.* at 50.

[38] *See id.* at 53.

[39] *See id.* at 14.

[40] *See id.* at 16.

[41] *See id.*

5
Case No.: 10-3970
ORDER

any of the listed impairments.[42] At step four, he found that through the last date of his insured status, Marasco had the residual functional capacity ("RFC") to "perform the full range of sedentary work as defined in" 20 C.F.R. § 404.1567(a).[43] Based on the RFC finding, the ALJ determined that through his last date of insured status, Marasco "was capable of performing past relevant work as a security guard," which "did not require the performance of work-related activities precluded by" Marasco's RFC.[44]

The ALJ gave several grounds for his determination. Although he noted that Marasco's complaints could be caused by his impairments, he found that Marasco's claims about the "intensity, persistence, and limiting effects of [the] symptoms are not credible to the extent they are inconsistent with" his RFC determination.[45] The ALJ attributed Marasco's struggle to control his diabetes to homelessness and poor diet that Marasco reported resulted from his loss of employment.[46] He pointed to Carlson's 2005 report that Marasco's symptoms were severe and left him bed-ridden, but that he was slowly improving with treatment.[47] He also pointed to the two reports indicating there was insufficient medical evidence from before Marasco's last date of insured status to determine if he was disabled.[48] He acknowledged that Marasco continued to complain of leg swelling and pain through 2009,[49] but noted Gable's opinion regarding Marasco's capacity and Gerber's determination that Marasco's impairment would not preclude sedentary work.[50]

---

[42] *See id.*

[43] *See id.* at 17.

[44] *See id.* at 19.

[45] *See id.* at 18.

[46] *See id.*

[47] *See id.*

[48] *See id.*

[49] *See id.*

[50] *See id.* at 19.

6

Case No.: 10-3970
ORDER

Having summarized the various opinions, the ALJ explained that he gave "the Disability Determination Services Medical Expert opinion great weight" because it was "more consistent with the record as a whole."[51] He did not name which medical expert he credited or which experts he did not credit. He further explained that he gave "the other Disability Determination Services opinions" and the opinions of Carlson and Nguyen "little weight" because "another opinion is more consistent with the record as a whole."[52]

Marasco requests that the court reverse the ALJ's decision and remand the case to the Social Security Administration for an award of benefits. Alternatively, Marasco requests that this case be remanded for further administrative proceedings to determine whether he is disabled. The Commissioner in turn asks that the ALJ's final decision be affirmed.

## II.  LEGAL STANDARDS

### A.  Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Curnow benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[53] In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[54] When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[55] Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[56] "If additional proceedings

---

[51] *See id.*

[52] *See id.*

[53] *See Moncada v. Chater,* 6 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[54] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[55] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501(9th Cir. 1989).

[56] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

7
Case No.: 10-3970
ORDER

1   can remedy defects in the original administrative proceedings, a social security case should be

2   remanded."[57]

3   **B. Standard for Determining Disability**

4   Disability claims are evaluated using a five-step, sequential evaluation process. In the first

5   step, the Commissioner must determine whether the claimant currently is engaged in substantial

6   gainful activity; if so, the claimant is not disabled and the claim is denied.[58] If the claimant is not

7   currently engaged in substantial gainful activity, the second step requires the Commissioner to

8   determine whether the claimant has a "severe" impairment or combination of impairments that

9   significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

10  disabled" is made and the claim is denied.[59] If the claimant has a "severe" impairment or

11  combination of impairments, the third step requires the Commissioner to determine whether the

12  impairment or combination of impairments meets or equals an impairment in the Listing; if so,

13  disability is conclusively presumed and benefits are awarded.[60] If the claimant's impairment or

14  combination of impairments does not meet or equal an impairment in the Listing, the fourth step

15  requires the Commissioner to determine whether the claimant has sufficient "residual functional

16  capacity"[61] to perform his or her past work; if so, the claimant is not disabled and the claim is

17  denied.[62] The plaintiff has the burden of proving that he or she is unable to perform past relevant

18  work.[63] If the claimant meets this burden, a prima facie case of disability is established. The

19  Commissioner then bears the burden of establishing that the claimant can perform other substantial

---

[57] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

[58] *See id.*

[59] *See id.*

[60] *See id.*

[61] A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[62] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[63] *See id.*

8
Case No.: 10-3970
ORDER

gainful work;[64] the determination of this issue comprises the fifth and final step in the sequential analysis.

### III. DISCUSSION

Marasco argues the ALJ erred in his finding that Marasco was not "disabled" as defined by the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq*, and was, thus, ineligible for disability benefits. He raises four issues with the ALJ's decision: (1) the ALJ failed to provide specific and legitimate reasons for disregarding the Plaintiff's claim that his last date of disability insurance was in 2005; (2) the ALJ failed to provide specific and legitimate reasons for disregarding the medical records and evaluations of his physicians; (3) the ALJ failed to provide him with a "full hearing" in accordance with the purposes of the SSA; and (4) the ALJ's conclusion that he could work as a security guard is unsupported by substantial evidence.

The Commissioner responds that: (1) the ALJ properly determined Marasco's last date of insured status; (2) substantial evidence supports the ALJ's determination that Marasco was not disabled on or before that date; (3) the ALJ properly conducted the hearing; and (4) the ALJ properly determined that Marasco had functional capacity to perform past relevant work as a security guard.

### A. Date Last Insured

Before considering Marasco's other claims, the court must first determine whether the ALJ's finding regarding the date Marasco was last insured was proper. Claimants are eligible for disability benefits only if they have "disability insured status" at the time they become disabled.[65] The last date of Marasco's disability insurance, therefore, governs the point in time at which

---

[64] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

[65] 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.")

9
Case No.: 10-3970
ORDER

1    Marasco must have shown he was disabled to be eligible for benefits.[66] It also governs the court's

2    review of the ALJ's determination that Marasco was not disabled as of June 30, 2003.

3    Marasco disputes the ALJ's finding that his last date of insured status was June 30, 2003,

4    arguing instead that he had insured status through 2005. He points to Social Security statements he

5    received in May 2004,[67] May 2005,[68] and May 2006[69] that suggest he was insured through May

6    2005 and that only in May 2006 was he notified of his ineligibility for disability benefits. Having

7    reviewed those statements and other statements produced by the Commissioner regarding

8    Marasco's insured status, the court finds substantial evidence supports the ALJ's determination that

9    Marasco's last date of insurance was June 30, 2003.

10   A brief explanation of the determination of "disability insured status" is necessary to

11   understand why. Under the regulations established pursuant to the SSA, disability insured status

12   has two requirements: (1) claimants must be "fully insured" during the quarter they became

13   disabled; and (2) they must have at least 20 quarters of coverage (QCs) in the 40-quarter period

14   ending with that quarter.[70] QCs are determined based on the amount of claimants' earnings in a

15   year.[71] To be "fully insured," claimants must have 40 QCs earned after they turn 21 years of age.[72]

16   In other words, to have "disability insured status" Marasco had to have worked the equivalent of

17   ten years to be fully insured, and he had to have worked the equivalent of five years out of the ten

18   years before he became disabled to have the 20 QCs required. Any QCs Marasco earned before the

19   ten year cut-off do not count toward the determination.

---

[66] *See Tidwell*, 161 F.3d at 601.

[67] *See* AR at 130-33.

[68] *See id.* at 134-37.

[69] *See id.* at 138-41.

[70] 20 C.F.R. § 404.130(b). Marasco was over 31 years old at all dates relevant to this case (AR at 251), so this provision applies to him.

[71] *Id.* § 404.140.

[72] *Id.* § 404.110(b).

10

Case No.: 10-3970
ORDER

According to the record, Marasco became fully insured in 1985 because by that year he had worked forty quarters.[73] The issue lies with when he met the second requirement. In 2003, Marasco had earned 20 QCs in the ten years prior: 4 in 1993; 0 in 1993, 1994, 1995, 1996, and 1997; 4 in 1998; 0 in 1999; 4 in 2000, 2001, and 2002.[74] He also earned two quarters in 2003, which would replace the two quarters in 1993 that dropped off from the ten-year limit.[75] He stopped working, however, in June 2003, and according to the record he did not earn any more QCs before his claim in 2007.[76] Unfortunately, the QCs he earned in 1993 dropped off his total because they were outside the ten-year limit.[77] As a result, the last date for Marasco's disability insured status was June 30, 2003. Accordingly, substantial evidence supports the ALJ's determination.

Marasco's reference to his Social Security statements does not change the result. Although the statements suggest Marasco continued to be covered, they did not include the 2003 and 2004 quarters that he did not work.[78] The 2004 quarters did not appear on his statement until 2006, when Marasco received notice that he was no longer eligible.[79] In essence, the statements Marasco received were a year or two behind in reflecting his eligibility. They do not, however, provide evidence to contradict the ALJ's determination.

Having found the ALJ's determination of Marasco's last insured date is supported by substantial evidence, the court must assess the remainder of Marasco's claims with that date as the deadline by which Marasco had to show he was disabled.[80] The court now turns to those claims.

---

[73] *See* AR at 120.

[74] *See id.* at 121.

[75] *See id.*

[76] *See id.*

[77] *See id.*

[78] *See id.* at 132, 136.

[79] *See id.* at 140.

[80] *See Tidwell*, 161 F.3d at 601.

1  **B.   Medical Evidence Determinations**

2  In light of the fact that substantial evidence supports the ALJ's last-insured-date determination, the court disposes of Marasco's contentions that the ALJ improperly discredited medical opinions from 2004 and 2005. To succeed on his disability claim, Marasco had to show he was disabled on or before his last insured date – here, June 30, 2003.[81] The medical records after that date indicate that Marasco continued to complain of edema in his legs and to struggle to control his diabetes,[82] but they do not suggest Marasco was disabled in 2003,[83] and as such, the ALJ properly disregarded them as irrelevant to the determination of Marasco's disability claim.[84]

But despite his proper assessment that Marasco's last date insured was June 30, 2003, the ALJ erred in the legal standard he applied to the medical evidence he did consider. The ALJ never examined or referenced any of the medical evidence from the 2003 time period when Marasco could claim disability.[85] For example, Marasco was hospitalized on June 23, 2003,[86] which the ALJ never mentions in his decision. Marasco was again hospitalized in August 2003,[87] which, although after his last date insured, may be relevant to Marasco's condition in June 2003.[88] The ALJ instead considered only medical records from 2005 to 2009.[89] Although he could properly

---

[81] *See id.* ("[Claimant's] insured status expired on September 30, 1992. To be entitled to disability benefits, [Claimant] must establish that her disability existed on or before this date.").

[82] *See* AR 261, 270, 283, 285, 297, 305, 311, 312, 313, 318, 318, 320, 354, 372, 373, 411.

[83] They also do not suggest that Marasco was disabled in 2004 or 2005. *See* AR 261, 270, 283, 285, 297, 305, 311, 312, 313, 318, 318, 320, 354, 372, 373, 411.

[84] *See Tidwell*, 161 F.3d at 601 (finding ALJ properly discredited physician's report from examination performed "more than a year after the expiration of [the claimant's] insured status").

[85] *See* AR at 18-19.

[86] *See id.* at 322-323.

[87] *See id.* at 320-21.

[88] *See Cooper v. Astrue*, Case No. C-10-4299 EMC, 2011 WL 6303393 at *6-*7 (N.D. Cal. Dec. 16, 2011) (holding ALJ erred by failing to consider medical evidence from after last date of insured status but connected to injury pre-dating last date of eligibility).

[89] *See* AR at 18-19.

12
Case No.: 10-3970
ORDER

discredit the opinions of Carlson and Nguyen because their opinions post-dated Marasco's last date of insured status,[90] the ALJ credited the determination of the Gable, who performed his examination in March 2009.[91] Gable's report, thus, also post-dated Marasco's last date of insured status.

By crediting Gable's medical evidence, the ALJ, in essence, determined Marasco's disability at the time of his claim instead of at the time of his last date of insured status. But, Marasco's disability at the time of his claim is irrelevant unless it somehow sheds light on whether he was disabled on or before his last date of insured status.[92] The ALJ did not indicate that Gable's 2009 assessment in any way revealed whether Marasco was disabled in June 2003,[93] and Gable's report includes only an assessment of Marasco's abilities in 2009.[94] Thus, substantial evidence does not support the ALJ's decision to credit Gable's report. Even if the ALJ had provided a connection between Gable's 2009 assessment and Marasco's condition 6 years earlier, the ALJ also would have had to provide more explanation for failing to consider the later reports of Marasco's treating physicians, whose opinions should be weighted more heavily than an examining physician's.[95]

Because the ALJ applied the wrong legal standard by crediting Gable and by failing to consider any of the medical evidence from the relevant time period, the case must be remanded for further determinations.[96]

---

[90] *See id.* at 19, 410, 411.

[91] *See id.* at 19, 391.

[92] *See Cooper*, 2011 WL 6303393 at *7 (finding medical records dated over a year after last date insured should be considered because "a substantial link" existed between the injury and the records).

[93] *See* AR at 19.

[94] *See id.* at 391.

[95] *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

[96] *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002) ("Even though findings might be supported by substantial evidence, the correct legal standard must be applied in making a determination of disability."); *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968) (noting a

13
Case No.: 10-3970
ORDER

The ALJ's determination that Marasco had sufficient RFC to work as a security guard was derivative of the ALJ's problematic disability finding. Because the case will be remanded for further consideration of Marasco's disability in 2003, Marasco's work capacity must also be reconsidered.[97]

### C.     Full and Fair Hearing

Because the case will be remanded for further consideration of the medical evidence, the court addresses only briefly Marasco's contentions about his hearing. Marasco argues that the ALJ failed to adequately inquire into his decision to proceed without an attorney and that his lack of notice regarding the testimony of a medical expert at his second hearing was prejudicial. He also asserts that the ALJ's failure to call his wife to testify about his symptoms and the extent of his impairment resulted in an incomplete record.

####    1.     Inquiry into Marasco's Decision to Proceed Pro Se

Because Marasco was unrepresented, the ALJ had an obligation to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts"[98] and be "especially diligent in ensuring that the favorable as well as unfavorable facts and circumstances [were] elicited."[99] Lack of counsel, alone, however, "does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings."[100]

---

"decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision"); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (holding that "[i]f additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded" and that reversal and immediate award of benefits is appropriate only where the record "has been thoroughly developed" and "a rehearing would simply delay receipt of benefits.").

[97] The court, therefore, will not address Marasco's argument regarding his work capacity.

[98] *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (quoting *Gold v. Sec'y of Health, Educ., & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)).

[99] *Id.* (quoting *Rosa v. Weinberger*, 381 F. Supp. 377, 381 (E.D.N.Y. 1974)).

[100] *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981) (internal citations omitted).

14
Case No.: 10-3970
ORDER

Marasco's argument that the ALJ failed to adequately inquire into his decision to proceed without counsel has no merit.  At the May 2009 hearing, the ALJ asked Marasco about his lack of representation, to which Marasco responded that he had retained at different times two attorneys who had withdrawn from his case.[101]  The ALJ offered Marasco more time to find an attorney, but Marasco, referencing the length of time he had struggled with his diabetes and his frustration with his former attorneys, indicated his desire to move forward with his case.[102]  When Marasco expressed concern about the wisdom of proceeding without an attorney, the ALJ again offered him more time to find counsel.[103]  Marasco again turned down the offer.[104]  The ALJ inquired into Marasco's decision to proceed as a pro se claimant, offered him more time to acquire representation, and accepted Marasco's voluntary decision to proceed without counsel.[105]  The ALJ satisfied his obligation.[106]

### 2.  Telephonic Testimony of the Medical Expert

Marasco's argument regarding the telephonic testimony of a medical expert at his second hearing, in contrast, has more traction.  Under 20 C.F.R. § 404.938(b), Marasco was entitled to notice if a witness's appearance was "scheduled to be made by teleconferencing rather than in person."  Leaving aside the thorny issue of whether telephonic appearances are even permitted under the regulations,[107] Section 404.938(b) suggests, at the very least, that Marasco should have

---

[101] *See* AR at 58.

[102] *See id.* at 59.

[103] *See id.*

[104] *See id.*

[105] *See id.*

[106] *See Harper v. Chater*, Case No. 94-20853 JW, 1996 WL 193860 at *3 (N.D. Cal. Apr. 17, 1996) (finding ALJ "fulfilled his duty to develop the record" where ALJ "questioned [claimant's] decision to proceed without counsel" and "[u]pon questioning [claimant] reiterated her desire to proceed pro se").

[107] *See Edwards v. Astrue*, Case No. 3:10cv1017(MRK), 2011 WL 3490024 at *6 (D.Conn. Aug. 10, 2011) (noting that the Social Security Administration "has proposed, but not passed a regulation that would allow telephonic testimony at administrative hearings" and finding claimant's objection to telephonic testimony required remand); *see also Hepp v. Astrue*, 511 F.3d

15

Case No.: 10-3970
ORDER

received notice that Gerber would appear by telephone.[108] No such notice appears in the record. Because the court must remand on other grounds, it will do no more with this issue than note that the failure to provide notice for Gerber's telephonic testimony may have violated Section 404.938(b).[109]

### 3. Failure to Call Marasco's Wife as a Witness

As to Marasco's argument that the ALJ's failure to call his wife to testify prevented him from having a full and fair proceeding, he extends too far the ALJ's obligation to develop the record. "[T]he ALJ may consider information from non-medical sources in evaluating a claimant's alleged disability," but that discretion does not create "an affirmative duty to elicit testimony from lay witnesses."[110] Social Security Ruling 83-20 advises, however, that "[i]f reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation" including information "from family members, friends and former employers." On remand, the ALJ may want to consider Marasco's wife's testimony if it sheds further light on whether Marasco was disabled before his last date of insured status.

## CONCLUSION

The ALJ's determination of Marasco's last date of insured status is supported by substantial evidence, but because the ALJ applied the wrong legal standard when considering the medical

---

798, 806 (8th Cir. 2008) (noting telephonic cross-examination may violate Section 404.950(e) but declining to address issue). *But see Tardiff v. Astrue*, Case No. 11-cv-17-JD, 2011 WL 777484 at *5 (D.N.H. Mar. 7, 2012) (finding telephonic testimony does not violate regulations specifying only in-person and videoconferencing testimony); *Goodwin v. Astrue*, Case No. 10-cv-233-PB, 2011 WL 1630927 at *11 (D.N.H. Apr. 11, 2011) (same).

[108] *See Edwards*, 2011 WL 3490024 at *8 (analogizing the notice requirements of § 404.938(b) to telephonic testimony).

[109] *See id.* (providing an in-depth analysis of the issues surrounding telephonic testimony in Social Security proceedings); *see also Koutrakos v. Astrue*, Case No. 3:11-cv-306(CSH), 2012 WL 1247263 (D.Conn. Apr. 13, 2012) (finding telephonic testimony over a claimant's objection was not harmless error and required remand).

[110] *See Amodeo v. Chater*, Case No. C 95-01099 CW, 1995 WL 652473 at *3 (N.D. Cal. Oct. 31, 1995) (addressing pro se claimant's argument that ALJ had affirmative duty to call lay witnesses).

16

Case No.: 10-3970
ORDER

evidence, Marasco's motion for summary judgment is GRANTED, the Commissioner's cross-motion for summary judgment is DENIED, and the case will be remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: October 2, 2012

PAUL S. GREWAL
United States Magistrate Judge

Case No.: 10-3970
ORDER